Joseph A. Suozzi, J.
This is an application made pursuant to article 78 of the Civil Practice Act for an order reviewing and annulling a determination of the respondent Board of Zoning Appeals of the Town of Hempstead. The board, in its decision of October 19, 1962, granted a special exception permit to Federated Properties, Inc., to erect a drive-in motion picture theatre on premises in Inwood, Nassau County, New York.
The premises involved is an irregularly shaped parcel of about 12 acres. The 40-foot wide entrance to the drive-in theatre is located on the north side of Burnside Avenue, and the first 350 feet of this property north from Burnside Avenue is zoned for business; the balance is zoned industrial. The Building Department had properly disapproved an application for a drive-in theatre because such a use in business and industrial districts requires a special exception permit which may be granted only upon approval by the Board of Appeals, after public notice and hearing.
The record discloses that the proposed drive-in theatre is part of an over-all development which encompasses a total of 16 acres; that an application was pending before the same respondent board for a 100-room hotel with accessory use; that an application for a gasoline station had been heard by the Town Board and a decision thereon was pending; and that included in said over-all development, in addition to the hotel and gas station, was a proposed restaurant and office building. It is further disclosed that there was proposed a service road of the Nassau Expressway on the easterly boundary of the premises involved.
The petitioners are owners of and residents in single-family dwellings located within one-half mile of the real property involved in this proceeding, and one of them, Joseph Músico, appeared and participated at the public hearing. The petitioners contend that unless the decision of the respondents is set aside, the erection and maintenance of a drive-in theatre ‘ ‘ would be ruinous to their property”. Among the reasons alleged *1078 is that it would create an intolerable traffic burden in the community.
In addition, the petitioners attacked the sufficiency of the notice of public hearing, and also attacked the vote of the board on the ground that a majority of the board did not attend the entire hearing, and that the vote of the one member who was absent for part of the hearing was an illegal one. As to the sufficiency of notice, the court finds that respondents fully complied with the requirements of law with respect to the notice. The court further finds that the affirmative vote of the board member Seiffert was legally cast, for despite his absence during part of the hearing, it does appear from his affidavit that he had full access to all information necessary for the decision he made, and properly availed himself of this information before casting his vote. (Matter of Taub v. Pirnie, 3 N Y 2d 188,195.)
In making a determination under the town ordinance, the respondent board exercised a judgment or discretion which is reviewable as to its reasonableness, and the approval of an application for a special exception may be overturned if the approval is shown to have been illegal, arbitrary or an abuse of discretion (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24; Matter of Rothstein v. County Operating Co., 6 N Y 2d 728).
The record discloses that one of the principal concerns of the board at the hearing was with the traffic resulting from the 825 cars entering and leaving the proposed drive-in theatre. After considering the testimony presented the board made a series of findings, among which is the following: ‘ ‘ That the location of the proposed use will not create any undue increase in vehicular traffic congestion on the public streets.” The resolution of approval of the application states that in determining this case the board has considered both the character and the existing uses and probable development of uses in the district.
It is apparent from the decision of the board and the minutes of the public hearing that the board has relied primarily on the testimony of the applicant’s expert witness in making .the finding relative to traffic congestion. For the first time in an affidavit submitted by the chairman of the board in opposition to the petition herein, some reliance for this finding is placed on the personal knowledge of members of the board that the peak load of the 825 cars maximum which would enter and leave the drive-in theatre would be discharged onto the public highways at a late hour in the evening when traffic is “normally far below its maximum ”.
*1079 The testimony of the applicant’s engineer was that the existing roadways were sufficient to absorb the traffic for the drive-in theatre, and that such operation in the area would not adversely affect traffic conditions, and that Burnside Avenue at the present time was not being utilized to its full capacity. The applicant’s engineer’s statement of experience discloses that he had no previous familiarity with the area involved or with the traffic conditions in the area except as he was able to obtain from traffic counts received from the County of Nassau and from observations made by him on the Labor Day week end, 1962. His experience in connection with drive-in theatres has been primarily with such uses in the State of Massachusetts. In his opinion the Labor Day week end “ would be the height of activity in the beach resorts in the area in the evening hours on Labor Day and also on Saturday night.” The conditions observed by him on Sunday night of that week end by his own admission were not indicative of the usual Sunday traffic, because it had rained on that day.
The figures obtained from the county showed that the average traffic count per day over the period of a year was 25,130 cars. On one particular day mentioned in the record, January 12, the count was 21,892. This in itself would indicate that the traffic counts on many other days must have been in excess of the ‘ ‘ average ’ ’ of 25,130 cars daily. Since the traffic counts provided to the applicant’s engineer by the county were not broken down for the evening hours when the drive-in theatre would be operating, his opinions with respect to the traffic during these hours are predicated principally on his observations on the evening of Labor Day and the preceding Saturday.
No evidence is presented as to the condition of traffic on Taft Avenue or any of the other streets which may be affected by this use. Some statements, without any evidence to support them, are made by the engineer with respect to the effect of the service road of the Nassau Expressway on traffic conditions in this area.
Observations of traffic conditions on two evenings, even by an expert, can hardly be deemed, in the court’s opinion, a sufficient or reasonable basis for the finding made by the board with respect to traffic congestion. The reasoning of the expert, which is apparently adopted by the board, is simply that the drive-in theatre use would occur during hours when Burnside Avenue would be able to handle these 825 cars. Yet the record is barren of any evidence, other than these minimal observations of the expert, as to what the traffic conditions during these hours would *1080 be, for it is admitted that the comity’s traffic counts were not broken down for these hours.
In spite of this very minimal evidence as to traffic conditions during the usual drive-in theatre hours, the expert was compelled to state that the drive-in theatre would bring Burnside Avenue “ up to virtually its full capacity for a period of about one-half hour at closing time ’ ’. There is nothing in the record from which we can surmise how close to full capacity this use would bring the road for all of the hours that the cars for the drive-in theatre would be using Burnside Avenue.
This in the court’s opinion would be sufficient to sustain its conclusion that the board’s finding was an unreasonable one and an abuse of its discretion under the circumstances. However, both at the public hearing and in the decision of the board reference was repeatedly made to the over-all development of which the drive-in is a part. While the status of the proposed restaurant and office building is not disclosed, these are uses expressly permitted in the business district and do not require approval of the Board of Appeals. An application for the 100-room hotel and accessory use was pending before the same respondent board, and a decision on an application for a gas station was pending before the Town Board.
While the board may have considered the character of the existing and probable uses in the district in making its finding that the location was suitable for a drive-in theatre, it obviously did not consider the character of the existing and probable uses contemplated by this over-all development in reaching its conclusion as to the traffic burden resulting therefrom. Although the procedures of the board may limit an application for a permit to one particular use, the board cannot, in a proper and reasonable discharge of its function, ignore the total picture of which it has personal knowledge and act on a piecemeal basis. The effect of such piecemeal consideration could conceivably be as harmful and undesirable as an outright act of spot zoning, which has been repeatedly condemned both by the courts and planning officials.
While -the board has made reference to and relied to some extent at least on the personal knowledge of the board members as to the effect of a discharge of 825 cars, it has obviously overlooked its knowledge of the over-all development proposed for the 16 acres. The examination by a member of the board of a witness with respect to the traffic difficulties resulting from a similar use in another part of the town suggests an inconsistency with the conclusion that a discharge of 825 cars would not result in a traffic burden on the public streets. It should be noted that *1081 toward the end of the expert witness’ testimony the observation was made by the chairman that he had not “ gotten ns [referring to the board members] convinced ’ ’, and 11 we know of two situations, they are bad. Is this what we are going to have? ” It does not appear to the court that any of the testimony which followed this question really answered it.
The expert witness referred to the fact that the toll booths for the drive-in were located some 750 feet north of Burnside Avenue, and that there would be four lanes approaching these toll booths. Accepting as correct the statement that the area between Burnside Avenue and the toll booths could handle 20% of the total capacity, or 165 cars at a time, and thereby prevent the backup of these cars, there is nothing in the record which indicates the extent of the backup problem which can be reasonably anticipated from the approach of more than 165 cars to the drive-in theatre in close proximity to each other, and the effect that such a problem would have on the traffic congestion on Burnside Avenue and the other public streets.
For all of these reasons, therefore, the court concludes that the board’s finding to the effect that the location of the proposed use will not create any undue increase in vehicular traffic congestion on the public streets is not demonstrated by the record before this court, and is an unreasonable one under all the facts and circumstances presented.
Accordingly, the decision of the respondent board granting the application for permission to erect a drive-in motion picture theatre is annulled and set aside, and the matter is remanded to the Board of Zoning Appeals of the Town of Hempstead for a rehearing of the application.